**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Douglas G. TELMAN, Defendant–Appellant.**

No. 93–3324.

United States Court of Appeals, Tenth Circuit.

June 30, 1994.

James E. Rumsey, Lawrence, KS, for defendant-appellant.

Gregory G. Hough, Asst. U.S. Atty. (Randall K. Rathbun, U.S. Atty., with him on the brief), Topeka, KS, for plaintiff-appellant.

Before BALDOCK, McWILLIAMS and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Douglas G. Telman, who pleaded guilty to possession with intent to distribute Lysergic Acid Diethylamide (LSD), 21 U.S.C. § 841(a), appeals his sentence. We have jurisdiction pursuant to 18 U.S.C. § 3742.

On November 18, 1991, Robert Kistler met with an undercover officer, Detective Sergeant Listrom. Prior to the meeting, Kistler had informed Listrom, through a contact named Danny Ferrin, that he (Kistler) wished to trade 1,000 units of LSD for Listrom's marijuana. Kistler met with Listrom at 7:45 p.m., but did not have the LSD with him. When Listrom denied Kistler's request to test the marijuana before the LSD was produced, Kistler left to retrieve the LSD. Fifteen minutes later, Kistler again met with Listrom and produced the LSD but informed Listrom that he had only 700 units to trade. Listrom allowed Kistler to smoke a sample of the marijuana, after which Kistler complained that the marijuana was of poor quality. Listrom offered to trade a one-pound bag of marijuana for the 700 units of LSD, but Kistler informed Listrom that he needed to consult with someone before the deal could be finalized. Listrom then offered to exchange one-and-a-quarter pounds of marijuana for the LSD, but Kistler again informed Listrom that he needed to consult someone else, a consultation which would take only thirty to forty-five minutes. Listrom suggested that Kistler take the one-and-a-quarter pounds of marijuana and Listrom keep the LSD, and if Kistler's people were not satisfied with the marijuana, Listrom would return the LSD. Kistler agreed to this arrangement and left.

Topeka police officers then attempted to arrest Kistler, who escaped in the car he had driven to meet Listrom. The car was registered to Jerry Kingsley, who was subsequently determined to be the father of Kistler's girlfriend, Jennifer Kingsley. Officers then learned that Kistler had dropped Ms. Kingsley and an individual named John Gallup at a Topeka mall prior to Kistler's meeting with Listrom.

When interviewed, Ms. Kingsley advised Detective Listrom that Kistler had been asked by Defendant to locate someone who wanted to trade marijuana for LSD. According to Ms. Kingsley, Defendant and Gallup had obtained the LSD from a New Jersey source, who had sent the LSD to Defendant by mail. Kingsley also stated that earlier in the day on November 18, 1991, prior to the Kistler–Listrom meeting, she had been present when Defendant and Gallup brought the LSD to Kistler in Lawrence, Kansas. At that time, Kistler placed the LSD in a white envelope, and later that afternoon, Kistler, Kingsley and Gallup departed for Topeka. Kingsley stated that while en route to Topeka, Gallup had told Kistler to bring him (Gallup) a sample of the marijuana before finalizing the transaction.

The investigation led authorities to Defendant, who made statements confirming the above version of the facts. However, Defendant advised the officer assigned to this case that his knowledge of the transaction involved a quantity of dosage units which was less than the dosage units actually involved in the transaction.

Defendant pleaded guilty to possession with intent to distribute LSD. The court calculated the weight of the LSD as approximately 9.94 grams, which was the weight determined by a forensic criminalist for the Kansas Bureau of Investigation. This weight included the weight of the blotter paper to which the dosage units were attached. As a result of this weight determination, Defendant was subject to a mandatory minimum prison sentence of five years, or sixty months. See 21 U.S.C. § 841(b)(1)(B) (possession of one gram or more of a substance containing LSD is subject to a five year mandatory minimum term of imprisonment). After reducing Defendant's offense level by three for acceptance of responsibility, the court apparently calculated his total offense level at twenty-nine, because it stated that Defendant's guideline range was 87 to 108 months. See U.S.S.G. 5A (Sentencing Table) (with Defendant's criminal history category of one, the guideline range of 87 to 108 months corresponds with an offense level of 29). After granting the government's motion for downward departure due to Defendant's substantial assistance, see U.S.S.G. § 5K1.1,

the court departed from the statutory mandatory minimum and the guideline range. In departing, the court reduced Defendant's offense level by fourteen points to level fifteen, which carries a sentencing range of eighteen to twenty-four months. The court then sentenced Defendant to eighteen months imprisonment.

On appeal, Defendant argues: (1) the court misapplied the guidelines by including the weight of the blotter paper in its quantity determination, thus making its original offense level calculation of twenty-nine erroneous; and (2) the district court erred by failing to depart downward from Defendant's offense level by two points for Defendant's minor role in the offense pursuant to U.S.S.G. § 3B1.2(b).

When Defendant was sentenced on October 8, 1993, a court could permissibly include the weight of the carrier medium when calculating LSD weight under U.S.S.G. § 2D1.1(c). *See Chapman v. United States,* 500 U.S. 453, 460, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991). After Defendant was sentenced, the Sentencing Commission amended the guidelines and provided that LSD weight was to be determined for sentencing purposes by assigning each dose of LSD a weight of 0.4 milligrams. *See* U.S.S.G. § 2D1.1(c); U.S.S.G.App. C, Amend. 488 (effective November 1, 1993). On January 27, 1994, Defendant filed a motion in district court pursuant to 18 U.S.C. § 3582(c)(2) to reduce his sentence of incarceration due to the November 1, 1993 amendment to § 2D1.1. In March, the district court denied Defendant's motion.

Defendant argues that the district court erred in failing to resentence him in accordance with the November 1993 amendment. Applying the amendment, the weight of the LSD would have been 280 milligrams, which would have placed Defendant's base offense level at eighteen. Assuming Defendant would have again received a three-point reduction for acceptance of responsibility, Defendant's total offense level would have been fifteen. Thus, Defendant argues that the court would have departed downward from fifteen rather than from twenty-nine when applying the § 5K1.1 motion, resulting in a lower sentencing range and ultimately resulting in a shorter sentence.

■ We begin our discussion by noting that Congress gave the Sentencing Commission the authority to decide whether and to what extent its amendments that reduce sentences are to be given retroactive effect. *Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991) (citing 28 U.S.C. § 994(a)). In discussing retroactivity, U.S.S.G. § 1B1.10(a) provides, "[w]here a defendant is serving a term of imprisonment and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the guidelines [that is specifically referenced in § 1B1.10(d) ], a reduction in defendant's term of imprisonment may be considered under 18 U.S.C. § 3582(c)(2)." The November 1, 1993 amendment to § 2D1.1, *i.e.,* Amendment 488, is specifically referenced in § 1B1.10(d). Thus, a district court "may [ ] consider[ ]" a reduction of a defendant's sentence pursuant to Amendment 488. However, it is apparent from the language of § 1B1.10(a)—*i.e.,* "may consider"—that a reduction is not mandatory but is instead committed to the sound discretion of the trial court. *See United States v. Holmes,* 13 F.3d 1217, 1222 (8th Cir.1994); *United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993).

■ In determining whether to reduce a defendant's sentence due to a subsequent amendment, 18 U.S.C. § 3582(c) directs the district court to "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable" and determine whether "reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Section 3553(a) lists the factors to be considered in imposing a sentence: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed (to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public, and to provide the defendant with needed occupation or vocational training); (4) the kinds of sentences available; (5) the applicable sentencing range under the guidelines; (6) any pertinent Sentencing Commission policy statements; (7)

the need to avoid unwarranted sentence disparities among Defendants; and (8) the need to provide restitution to victims. In denying Defendant's motion for a sentence reduction, the district court considered a number of these factors, including Defendant's post-amendment guideline range, and decided that due to Defendant's personal and offense characteristics, Defendant did not merit a sentence reduction. After reviewing the record, we cannot say the court abused its discretion.

 In addressing Defendant's second argument—*i.e.,* whether the district court erred by failing to depart downward from Defendant's offense level by two points for Defendant's minor role in the offense—we apply the clearly erroneous standard. *See United States v. Ballard,* 16 F.3d 1110, 1114 (10th Cir.1994) (clear error is standard of review for U.S.S.G. § 3B1.2 determinations). In applying the clearly erroneous standard, we will not reverse the district court unless the court's finding was without factual support in the record or if after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made. *United States v. Beaulieu,* 893 F.2d 1177, 1182 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

U.S.S.G. § 3B1.2 provides for a two-point downward adjustment of the base offense level for a defendant who was "a minor participant in any criminal activity." *See* U.S.S.G. § 3B1.2(b). A "minor participant" is described as "one who is less culpable than most other participants, but whose role could not be described as minimal." *Id.,* comment. 3. Defendant had the burden at sentencing of establishing by a preponderance of the evidence that he was a minor participant. *United States v. Occhipinti,* 998 F.2d 791, 802 (10th Cir.1993).

After reviewing the facts the district court had before it, we conclude the court's denial of a § 3B1.2(b) departure was not clearly erroneous. The district court had before it evidence from which it could find that Defendant was equally as culpable as Gallup and Kistler. In fact, Ms. Kingsley's statement reflected that Defendant was one

of Kistler's superiors in the drug buy in that Defendant had contacted Kistler and requested that he arrange a marijuana-for-LSD trade. Merely because Defendant was not present during the buy does not make him a minor participant. As the participant who had the New Jersey LSD contact and as the one who received the LSD, the trade would not have occurred without Defendant's participation.

AFFIRMED.