NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0720n.06

No. 07-3665

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 05, 2009**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DARNELL NESBIT,

    Defendant - Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Darnell Nesbit argues that the district court erred in denying him a two-level reduction in his base offense level for acceptance of responsibility under 3E1.1(a). Nesbit further argues that we should remand the matter of sentencing back to the district court for re-sentencing under the amended Guidelines for crack cocaine offenses. He also argues that the district court erred in denying a *Batson* motion that the government impermissibly struck an African-American juror. For the following reasons, we **AFFIRM** the judgment of the district court.

**I.**

On June 14, 2006, the grand jury returned a 49-count indictment against Nesbit and his co-defendants for activities related to the possession and sale of crack cocaine within 1,000 feet of a public school. Nesbit was charged with Count 1, conspiracy to possess with intent to distribute and to distribute more than 50 grams of crack in violation of 21 U.S.C. § 846; Count 35, distributing 3.68

grams of crack cocaine; Count 37, distributing 2.60 grams of crack cocaine; and Count 43, distributing 1.46 grams of crack cocaine.

On December 18, 2006, the government filed an Information pursuant to 18 U.S.C. § 851 to establish Nesbit's prior conviction. On March 19, 2007, the jury convicted Nesbit of Counts 35, 37, and 43. After his conviction, the United States Probation Office prepared a presentence report. Based on the report's calculations, Nesbit's criminal history category was VI and his adjusted base offense level was 28, producing an advisory guideline sentencing range of 140-175 months.

At the sentencing hearing on May 7, 2007, Nesbit asked the district court to consider a two-point reduction for acceptance of responsibility due to his testimony at trial and his pre-trial willingness—had a favorable deal with the government been reached—to plead guilty to the three counts for which the jury found him guilty. The court, in ruling on the two-point request for acceptance of responsibility, stated:

> Frankly, Mr Nesbit, I found your testimony to be completely lacking credibility. I found it amazing that you admitted conduct proven beyond all possible doubt, and yet any other conduct, you denied. And this court has to take into consideration whether you truthfully admitted all conduct and relevant conduct, and you simply didn't. You testified to only those portions that were convenient for you. Therefore, I do not believe you have completely accepted responsibility. I will not afford you the two level adjustment.

Nesbit's counsel then outlined Nesbit's background for the court and asked that he be sentenced to the lowest end of the applicable advisory guideline sentencing range of 140-175 months. Additionally, he requested a sentence of 120 months. Nesbit did not request a variance based on the Guidelines' disparate treatment of crack and cocaine offenses.

The district court sentenced Nesbit to a term of 150 months incarceration on Counts 35, 37, and 43 to run concurrently, followed by six years of supervised release, stating that:

> This Court does in fact find this sentence to be reasonable. It is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in 3553(a). The court has taken into consideration, number one, how serious this offense is, or was; number two, the large number (30) of criminal history points. In fact Mr. Nesbit, you are very fortunate that you are not a career offender, but the court did not give you more time because I did in fact take into consideration all of the statements made by your attorney regarding acceptance of responsibility. I do not believe you should get a technical adjustment for it, because you did not admit to all relevant conduct. However, you did go as far as to make some admissions, and that is why I gave you a sentence of 150 and not greater.

Nesbit timely appealed.

II.

A.      **Nesbit's Base Offense Level**

Nesbit challenges the district court's denial of a two-point reduction for acceptance of responsibility, alleging that the district court based its decision on acquitted conduct, or, as it was defined by the court, relevant conduct.

When reviewing sentencing decisions, we review a district court's factual findings for clear error and its conclusions of law *de novo* . *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005) (citation omitted). We review *de novo* a district court's application of the Sentencing Guidelines, *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir. 2005), and constitutional challenges to a defendant's sentence. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003).

Nesbit relies on *United States v. White*, 551 F.3d 381 (6th Cir. 2008), *en banc*, then before this court *en banc*, in arguing that permitting a district court to rely on acquitted conduct in

determining sentencing undermines the jury's role in deciding guilt or innocence. Unfortunately for

Nesbit, in *White*, this Court, sitting *en banc*, found that the holding of *United States v. Watts*, 519

U.S. 148 , 157 (1997)—that a district court is permitted to consider at sentencing conduct of which

a defendant is acquitted at trial so long as it was proven by a preponderance of the

evidence—continues to apply after the Supreme Court's holding in *United States v. Booker*, 543 U.S.

220, 240-41 (2004). *White*, 551 F.3d at 386. While a district court may enhance a defendant's

sentence based on acquitted conduct, this is not to say that it must do so. *Id.* Additionally, a court

that chooses to enhance "a sentence based on acquitted conduct . . . should articulate how and why,

in its judgment, such conduct appropriately influenced its Section 3553(a) analysis with respect to

the specific defendant and specific crime at issue." *Id.*

Here, the district court acknowledged that it was considering acquitted conduct because it

found Nesbit's testimony to be self-serving and his credibility to be limited. As we have previously

determined that consideration of acquitted conduct in sentencing is appropriate where the court

articulates why the conduct influenced its decision for the specific defendant and crime at issue, the

district court's judgment was correct.

**B.      Unreasonable Sentence Under Section 3553(a)**

Nesbit further claims that the district court failed to consider the factors set forth in Section

3553(a) and, as a result, the sentence imposed was not reasonable.

The standard of review for sentencing determinations is abuse of discretion. *Gall v. United

States*, 552 U.S. 38, 128 S. Ct. 586, 594 (2007). We review sentencing determinations for both

procedural and substantive reasonableness. A sentence is procedurally unreasonable if it is marked

by "significant procedural error, such as failing to calculate (or improperly calculating) the

Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,

selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence-including an explanation for any deviation from the Guidelines range." *Gall*, 128 S.Ct. at

597. "[A] sentence may be substantively unreasonable when the district court selects the sentence

arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors

or gives an unreasonable amount of weight to any pertinent factor." *United States v. Borho*, 485 F.3d

904, 908 (6th Cir. 2007) (citation and quotation marks omitted).

> Section 3553(a) provides that when imposing sentences courts:
>
> shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant [along with] the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a)(1-2). While the record must reflect that the district court considered the Section

3553 factors, the district court need not give a detailed explanation of the factors so long as the court

"satisf[ies] the appellate court that [the judge] has considered the parties' arguments and has a

reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551

U.S. 338, 356 (2007); *see also United States v. Madden*, 515 F.3d 601, 610 (6th Cir. 2008) (applying

*Rita* and noting that a judge may exercise discretion in determining how much explanation is

necessary, and that a lengthy explanation is not required when a judge decides simply to apply the

Guidelines to a particular case). Sentences that fall within the advisory Guidelines range are

afforded the "rebuttable presumption of reasonableness." *United States v. Erpenbeck*, 532 F.3d 423, 430 (6th Cir. 2008) (citing *Rita*, 551 U.S. at 345).

If we determine that no procedural error occurred, the sentence is then considered for substantive reasonableness, taking "into account the totality of the circumstances." *Erpenbeck*, 532 F.3d at 430. Where there is nothing in the record to indicate "that the district court selected the sentence arbitrarily or relied on impermissible factors," the sentence is presumptively reasonable. *Madden*, 515 F.3d at 613.

In this case, Nesbit's sentence falls within the Guideline range and is therefore presumptively reasonable. While the district court's references to the Section 3553(a) factors was hardly detailed or exhaustive, the judge's references to the purposes of the statute and clear understanding of how it should apply to Nesbit's sentences provides sufficient basis for this Court to be satisfied that the sentence was reasonable. The court reasonably exercised its discretion under Section 3553(a).

## C. Crack/Powder Disparity Sentencing

Nesbit contends that a retroactive amendment to the guideline for cocaine-base offenses requires that his case be remanded for re-sentencing. However, on October 2, 2009, the district court reduced Nesbit's sentence pursuant to 18 U.S.C. § 3582(c)(2) from 150 months to the statutory mandatory minimum of 120 months. Thus, his claim that the district court failed to consider section 3553(a) factors is now moot because, as his conviction stands, he cannot receive a lower sentence.[1]

## D. *Batson* Challenge

---

[1] He makes no argument that he would qualify for "safety valve" relief pursuant to 18 U.S.C. § 3553(f), nor does it appear that he would so qualify.

Nesbit, who is black, joined in defendant Harold Cameron's *Batson* claim, arguing that the

prosecution's exercise of one of its peremptory challenges against a black potential juror deprived

Nesbit of his right to equal protection. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme

Court held that the Equal Protection Clause prohibits purposeful racial discrimination in the selection

of a jury. In order to establish a *prima facie Batson* case, a "defendant must prove three things: 1)

that the defendant is a member of a cognizable racial group; 2) that the prosecutor has exercised

peremptory challenges against members of the defendant's race; and 3) that the relevant

circumstances raise an inference of purposeful discrimination." *United States v. Ferguson*, 23 F.3d

135, 141 (6th Cir. 1994) (citing *United States v. Peete*, 919 F.2d 1168, 1178 (6th Cir. 1990)). Once

the defendant establishes a *prima facie* case, the burden shifts to the prosecution to present a race-

neutral explanation for having excluded the juror. *Id.* This Court gives "'great deference' to the

district court's findings on the credibility of the prosecution's asserted neutral explanations." *Id.*

(citing *Batson*, 476 U.S. at 98 n.21).

Here, defense counsel for Gillis[2] raised a *Batson* objection after the government exercised

one of six peremptory challenges against a black juror, Ms. Cooper. The government had previously

dismissed five white jurors, one for a previous arrest, with peremptory challenges. While Nesbit can

clearly establish the first two elements of the *prima facie* Batson challenge, he has not offered

sufficient evidence to support the inference of discrimination necessary to meet the third element.

*Id.* (citing *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1520-21 (6th Cir. 1988) (setting forth

---

[2] Neither Cameron nor Nesbit made a *Batson* challenge at the district court level. However, neither party argues that Cameron or Nesbit forfeited their right to bring a *Batson* challenge by not bringing the motion individually at trial.

factors to be considered in assessing inference of intentional discrimination, including racial composition of jury pool and final jury panel, number of peremptory strikes, race of those jurors struck or excused, and order of strikes)). An inference of intentional discrimination does not necessarily arise even if the prosecution used all of its peremptory challenges to exclude blacks. *Id.*

Here, the only black juror that the government removed from the panel was Juror Cooper. When Gillis' counsel expressed concern that the government was "using peremptories to eliminate black jurors from the panel" and asked the government to state its reasons for challenging Juror Cooper, the government stated that the reason that the challenge was exercised was because Cooper had been arrested within the past year. The government further noted that three African Americans were currently in the jury box, more than were present when *voir dire* commenced, and that they had no intention of challenging any additional potential black jurors. Given the fact that the number of black jurors that served on the panel was higher than before *voir dire* and that the government used peremptory challenges to strike six jurors and only one of them was black, there is sufficient evidence to determine that this reason was not pretextual. Additionally, the government struck a white juror for the same reason. As this information was within the trial court's purview and this Court gives broad deference to the district court's findings, we **AFFIRM** the district court's denial of *Batson* challenges.

IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.